IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES CELLULAR CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> HOTLINE WIRELESS & MORE, INC. <br><br> Defendant. | Case No. 1:12-cv-05017 |

**UNITED STATES CELLULAR CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Defendant Hotline Wireless & More, Inc. ("Hotline Wireless") is currently, without permission or authorization, using Plaintiff United States Cellular Corporation's ("U.S. Cellular") trademark to promote Hotline Wireless' business. This unauthorized use is likely to confuse customers as to Hotline Wireless' affiliation with U.S. Cellular and is damaging the reputation and goodwill U.S. Cellular has cultivated through substantial investment. Accordingly, the issuance of an immediate temporary retraining order is essential to halt Hotline Wireless' illegal acts and protect U.S. Cellular from further irreparable harm.

**FACTS**

U.S. Cellular was formed in 1983 and is a Chicago-based regional provider of wireless telecommunications services. U.S. Cellular's wireless service is primarily sold through a mix of retail stores owned by U.S. Cellular and owned by authorized independent agents and stores. One of the ways in which U.S. Cellular competes with larger national wireless carriers is by providing a superior customer experience, including customer experience at stores selling U.S.

Cellular wireless service. The reputation and goodwill U.S. Cellular has cultivated are thus among U.S. Cellular's most valuable assets.

U.S. Cellular owns a number of trademarks, including one consisting a distinctive star design along with "U.S." (in red type) and "Cellular" (in blue type):

U.S. Cellular's trademark has been federally registered with the United States Patent and Trademark Office, registration No. 2,650,943. (Verified Complaint, Ex. 1 (Certificate of registration and renewal documentation.) U.S. Cellular's trademark was issued on November 19, 2002 and cites a date of first use of May 10, 1999. (*Id.*) The registration is for wireless communications services, namely, cellular telephone communications services, paging services, and satellite transmission service. (*Id.*) U.S. Cellular has used this mark continuously for the past thirteen years to identify its wireless service business and affiliated stores. (Verified Complaint at ¶ 8.)

U.S. Cellular has invested substantial time, effort, and resources in promoting and marketing its services under and in connection with its trademarks. (*Id.* at ¶ 11.) For example, U.S. Cellular has promoted and marketed its services in connection with its trademarks in print media, radio, billboards, and television advertising. (*Id.*) In addition, U.S. Cellular maintains a website in which the U.S. Cellular trademark is used. (*See* http://www. http://www.uscellular.com.)

As a result of U.S. Cellular's continuous and extensive use of its trademark in connection with its wireless service business, the mark has developed considerable customer recognition.

And U.S. Cellular's mark has acquired a further distinctiveness and secondary meaning signifying U.S. Cellular has cultivated and now owns considerable and valuable goodwill in and symbolized by U.S. Cellular's mark. U.S. Cellular's trademark is one of its most valuable assets.

Additionally, U.S. Cellular's trademark is a valuable asset because use of U.S. Cellular's trademark is part of the benefit given to authorized agents who sell U.S. Cellular wireless services and provide an essential part of the high quality customer experience U.S. Cellular's customers have come to expect. U.S. Cellular's investment in promoting the U.S. Cellular brand under and in connection with U.S. Cellular's marks is part of the consideration exchanged when U.S. Cellular enters into an agreement with an authorized agent.

On June 5, 2012, U.S. Cellular learned that Hotline Wireless is prominently displaying the U.S. Cellular trademark on a sign on the face of its storefront at 3938 W. Roosevelt Road, Chicago, IL 60624. And Hotline Wireless is displaying U.S. Cellular's trademark on a second sign near Hotline Wireless' storefront. Photographs of the signs are attached to the contemporaneously filed Declaration of Timothy Murphy as Exhibits 1 and 2.

Neither Hotline Wireless nor anyone purporting to represent it has sought or received permission from U.S. Cellular to use U.S. Cellular's trademark. On June 5, 2012, U.S. Cellular sent a cease and desist letter to Hotline Wireless notifying Hotline Wireless that its display of U.S. Cellular's mark is without permission and constitutes trademark infringement. (Verified Complaint, Ex. 2 (June 5, 2012 cease and desist letter to Hotline Wireless).) U.S. Cellular demanded that Hotline Wireless cease using U.S. Cellular's mark and confirm that all use of U.S. Cellular mark has ceased by signing and returning the June 5, 2012 letter. Hotline Wireless has not responded to U.S. Cellular's demand and continues to display U.S. Cellular's trademark on and near its storefront.

Accordingly, pursuant to Federal Rule of Civil Procedure 65, the Court should issue a temporary restraining order enjoining Hotline Wireless' use of U.S. Cellular's trademark in order to prevent further irreparable harm to U.S. Cellular.

## **ARGUMENT**

"To obtain a temporary restraining order pursuant to Fed.R.Civ.P. 65, [a plaintiff] must first demonstrate: (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) an irreparable injury if the TRO is not issued." *Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*, 833 F. Supp. 2d 870 (N.D. Ill. 2011) (citing *Ty, Inc. v. Jones Group,* 237 F.3d 891, 895 (7th Cir. 2001)). "If the moving party meets this burden, then the court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *7-Eleven, Inc. v. Spear*, 10-CV-6697, 2011 WL 830069, *3 (N.D. Ill. Mar. 3, 2011) (citing *Storck USA, L.P. v. Farley Candy Co.,* 14 F.3d 311, 314 (7th Cir. 1994)). "Finally, the court considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties." *Id.* "The court then weighs all of these factors, sitting as would a chancellor in equity and applying a 'sliding scale' approach, under which the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position. *Id.* (citing *Ty*, 237 F.3d at 895). A subsequent preliminary injunction under Rule 65(a) will be appropriate under the same standard. *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) ("The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions."). For the reasons set forth below, U.S. Cellular is overwhelmingly likely to succeed on the merits, and each of the other criteria require entry of a temporary restraining order.

4

**I.**     **U.S. Cellular Is Overwhelmingly Likely To Succeed On The Merits**

U.S. Cellular "can show a likelihood of success on the merits by demonstrating a 'better than negligible chance' of prevailing on at least one of their claims." *Domanus v. Lewicki*, 08 C 4922, 2012 WL 1247102, *3 (N.D. Ill. Apr. 13, 2012). This is a low threshold. *Sofinet v. I.N.S.*, 188 F.3d 703, 707 (7th Cir. 1999) ("Although there is thus a minimum threshold for likelihood of success, we held in *Roland Machinery* that it is a low one.").

Here, U.S. Cellular's complaint asserts claims for trademark infringement and false designation of origin under the Lanham Act and at common law. To establish a claim for trademark infringement and false designation of origin, U.S. Cellular must show that (1) it has a valid trademark and (2) the Defendants' misuse of the trademark is likely to cause confusion. *Munters Corp. v. Matsuri America, Inc.*, 909 F.2d 250, 272 (7th Cir. 1990).

U.S. Cellular has a valid trademark. A federal registration of a trademark is *prima facie* evidence of a claimant's ownership of a mark, the validity of the registration, and the claimant's exclusive right to use the mark on the goods specified in the registration. *See* 15 U.S.C. §1115(a); *see also James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 273 (7th Cir. 1976). As discussed above, U.S. Cellular registered the trademark at issue in 2002 and has continually used the mark since 1999. U.S. Cellular has valid and exclusive rights in its mark based on both continual usage and by virtue of the mark's federal registration.

Hotline Wireless' use of U.S. Cellular's trademark is likely to cause confusion. There can be no doubt whatsoever that by displaying a prominent sign on the front of its store (and near its storefront) featuring the U.S. Cellular mark, Hotline Wireless infringes on U.S. Cellular's exclusive right to use the U.S. Cellular trademark. Indeed, the trademark used in Hotline Wireless' offending signs is not merely similar to U.S. Cellular's trademark, it is identical to it. By using U.S. Cellular's mark and inviting persons into its store, Hotline Wireless attempts to

capitalize on the goodwill associated with the U.S. Cellular trademark by implying an affiliation with or sponsorship by U.S. Cellular. In other words, when Hotline Wireless promotes itself using U.S. Cellular's trademarks, consumers are likely to believe that Hotline Wireless is affiliated with U.S. Cellular. Thus, infringement of U.S. Cellular's protectable mark is clear, and U.S. Cellular will certainly prevail on the merits in this lawsuit.

## II. U.S. Cellular Is Currently Suffering Irreparable Harm For Which There Is No Adequate Remedy At Law.

"It is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *7-Eleven, Inc. v. Spear*, 10-CV-6697, 2011 WL 830069, *6 (N.D. Ill. Mar. 3, 2011) (internal quotation omitted); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution."); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) ("[I]t is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations [of the Lanham Act]."). Indeed, "[c]ourts readily find irreparable harm in trademark infringement cases because of the victim's inability to control the nature and quality of the infringer's goods." *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir. 1983). And courts hold that "damages occasioned by trademark infringement are by their very nature not susceptible of adequate measurement for remedy at law." *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1046 (N.D. Ill. 2001) (internal quotation omitted).

In this case, U.S. Cellular's goodwill and reputation are being irreparably harmed by Hotline Wireless' unauthorized use of U.S. Cellular's mark. U.S. Cellar has been and continues to be deprived of the ability to control the nature and quality of wireless service being sold in its

name. Customers that pass by or enter Hotline Wireless' store will be misled into believing that Hotline Wireless is affiliated with U.S. Cellular. No remedy at law could adequately compensate U.S. Cellular for the actual or potential loss of reputation and goodwill caused by Hotline Wireless' infringing acts.

**III.     The Balance of Hardships Overwhelming Favors Entry of a Temporary Restraining Order Because Hotline Wireless Will Not Suffer Any Harm If Preliminary Relief Is Granted.**

Hotline Wireless has blatantly ignored the trademark laws by pirating U.S. Cellular's mark for Hotline Wireless' own commercial gain. That no irreparable harm can come to Hotline Wireless by on order enjoining its trademark infringement is self-evident. Indeed, a temporary restraining order would not cause Hotline Wireless any legitimately cognizable harm. .See *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (holding that the balance of harms favored an injunction and noting that "having adopted its course [defendant] cannot now complain that having to mend its ways will be too expensive") It would remain free to operate its business in all lawful respects. It just needs to suspend its use of U.S. Cellular's trademark.

**IV.     The Public Interest Supports The Entry Of A Temporary Restraining Order.**

In trademark infringement actions, the rights infringed include are "the right of the public to be free of confusion and the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 794 (N.D. Ill. 1998) ("[T]he paramount interest promoted by the Lanham Act is the right of the public not to be confused about the origin of goods.") (internal quotation omitted). Accordingly, the public interest is served in enjoining violations of the Lanham Act and unfair competition laws based on trademark infringement. In contrast, there is no conceivable reason why denial of a temporary restraining order would promote the public interest.

7

## **CONCLUSION**

For the foregoing reasons, the Court should grant U.S. Cellular's Motion For Temporary Restraining Order.

Date: June 25, 2012

Respectfully submitted,

UNITED STATES CELLULAR CORPORATION

By: /s/ Robert D. Leighton
    One of Its Attorneys

Richard J. O'Brien
Robert D. Leighton
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000

## **CERTIFICATE OF SERVICE**

Robert D. Leighton, an attorney, hereby certifies that he effected service by placing the foregoing document with a special process server for hand delivery and mailing a copy of the same via First Class Mail to:

> Hotline Wireless & More, Inc.
> c/o Amer Hijazi, Registered Agent and President
> 3938 W. Roosevelt Road
> Chicago, IL  60624

On this 25th day of June, 2012.

                                                  /s/ Robert D. Leighton

                                                 Robert D. Leighton